Second case on the docket today, case number 19-7276 Witherspoon v. Stonebreaker. Yes. Thank you, Mr. Clark. Mr. Korzen, are you there? Yes, sir, your honor. May it please the court, John Korzen with the Wake Forest Appellate Clinic. Good afternoon, Judge King, Judge Rushing, Judge Gibney. Good Friday afternoon. Under Local Rule 46A, it's my pleasure to introduce the two student counsel on this case. Emily Washburn will do the opening and then Rohan Shah will do the rebuttal. Thank you, honors, very much. Thank you, Professor. Ms. Washburn, we're pleased to have you with us. Thank you very much. Thank you, your honors. May it please the court. My name is Emily Washburn, and I, along with my co-counsel, Rohan Shah, represent the appellate in this case, Lionel Witherspoon. Your honors, this case involves a hung jury who had deliberated for two days, asked numerous questions, and been administered an Allen charge only to reach no verdict. However, upon the presentation of new evidence during jury deliberations and trial counselors' failure to object, the previously hung jury reached a unanimous verdict a mere 10 minutes after being presented with this new evidence. Today, this court has the ability to protect Mr. Witherspoon's Sixth Amendment right to effective assistance of counsel and reinforce the high standards of the legal profession. Your honors, the state post-conviction court unreasonably applied federal law in this case for two main reasons. First, the state court conflated an attempt to object with an actual objection and then deemed that attempt to be in line with prevailing professional norms. And second, the prejudicial effect of trial counselors' failure to object is clearly demonstrated through the close proximity and time between the presentation of new evidence and the jury's unanimous verdict. Therefore, Appellant Lionel Witherspoon respectfully requests that this court reverse the judgment dismissing his petition for habeas corpus. The governing standard for ineffective assistance of counsel claims was set forth by the Supreme Court in Strickland v. Washington. To prevail, a petitioner must satisfy both… You say that counsel didn't object. The district court here says that counsel did object. The magistrate judge here, the United States magistrate judge, says that counsel did object. The state court down in… PCR court down in South Carolina said that counsel attempted to object. And you all say, and you say counsel didn't. What are we supposed to do with those differences? Your Honor, the PCR court's classification of mistrial counsel's attempt to object doesn't amount to an actual objection that the trial counsel ruled on and is sufficient to preserve an issue for appeal. Here as noted on page 246 of the joint appendix, counsel's exact words in response to the trial judge's question, any objection were, I would, Your Honor, but… And then she doesn't continue on. As also noted on that page, there was ample time… Our court, PCR court, heard the testimony of the defense attorney, the trial attorney, and found that counsel attempted to object. Aren't we bound by that? No, Your Honor. Counsel and the, as I say, the district court and the magistrate court, magistrate judge, both said she did object. We are bound by that. Do you agree with me we are not bound by what they said? No, Your Honor. This is reviewed de novo. And the trial court there, or the PCR court, found… What are we supposed to do with the facts? The PCR court said they attempted to object, and you all, you and your field papers assert as a fact that she did not object. Now, that's a different set of facts, is it not? Yes, Your Honor. Why don't you have to, why don't you accept the facts as determined by the PCR court? The PCR court classified her objection as just an attempt to object, which is not an actual objection. And they based their ruling on the PCR hearing where trial counsel testified. And in her own words on page 292 of the joint appendix, she classifies her own statement as merely an attempt to object. And the respondent's brief was… Well, it's not even much of an attempt, is it? Because to begin with, her statement is conditional. I would object. And then she says, but, which sounds to me like she says, well, I would, but I won't. Yes. Yes, Your Honor. I don't see how you can disprove that any other way. Yes, Your Honor. Counsel didn't, I believe the PCR court noted, counsel testified that she was often cut off by the judge. She was presumably trying to be polite because she was in South Carolina courts for this PCR hearing. But this judge often would, would rule quite quickly on her attempted objection. So why was the PCR court unreasonable in reading the transcript to say, I would. And then the judge cuts her off as she's saying, but, and there goes her opportunity. Your Honor. Why is that unreasonable? The trial judge did object to, or interrupt her two times previously on pages 197 and 198 of the joint appendix, and then on pages 230 of the joint appendix. However, at both of those times, he interrupted first while she was making a motion for a directed verdict, and the second time while she was making a suggestion for an answer to a previous jury question. However, both of those were conversational. And the judge and the trial counsel had dialogue between them. Here, trial counsel's words, I would, Your Honor, but, and then just stopping and not continuing to pursue that objection, nor state any grounds for the specific objection is objectively unreasonable. I have a question on that. In your papers you do, you suggest that the reason that her objection was not sufficient or was deficient performance was because she didn't explain it fully enough to preserve an issue for appeal under South Carolina law. And I know the other side has some law where they say, no, this would be sufficient. But I had a question about, is your argument that she was deficient for failing to preserve the objection for appeal? Or is your argument that she was deficient for failing to draw the trial judge's attention to the objection and obtain a ruling? Your Honor, we would argue both. It was deficient for her not to object to this and point to the fact that it was new evidence being introduced during jury deliberations, which the trial judge had already noted in refusing to answer previous jury questions is highly improper to supplement jury deliberations with the introduction of new evidence. Ms. Washburn. Yes, Your Honor. What should she have done? Should she have asked for a bench conference or insisted that, I mean, you know, one could argue that at that stage in the trial, she didn't want to look like she was arguing with the judge and that might be a somewhat acceptable strategy. But couldn't she have asked for a bench conference with the judge or made the dreaded speaking objection saying that, well, Your Honor, this needs to be explained fully with witnesses and it's too late to do that. It's confusing to the jury. Yes, Your Honor. She could have done both. As previously noted on page 246, the record does state that there was a brief pause in the proceedings where Mr. Witherspoon was asked to stand. So she could have asked for a bench conference or for the jury to be excused if she wished to be heard on the objection outside of the presence of the jury. However, with prevailing professional norms, other defense attorneys have also objected in the presence of the jury and been heard on that. So that would have been a different option for her as well. What's your best what's your best case that an attempted objection that was the council tried to object, but for whatever reason, didn't get it out? What's your best case that that is deficient performance and that it's violates clearly established federal law that that is insufficient? Your Honor, this South Carolina Court of Appeals held in Haskins versus Fairfield Electric Co-op, that when a trial judge doesn't rule on the objection and then counsel doesn't pursue a ruling that there's no decision for an appellate court to review. So because trial counsel here failed to object, failed to state a grounds for the objection and failed to secure a ruling for the objection under South Carolina rule of evidence, her performance was sufficient and did not preserve any issue for Mr. Witherspoon to have appealed. And also contradicted his Sixth Amendment right to effectively confront the witnesses or the test that evidence that had been presented against him. Have you tried to make the prejudice showing that that you would need to make for the appellate argument? So if your argument is that she didn't preserve it for appeal, and then that was so deficient to be that clearly established federal law tells us that's so deficient to be ineffective, then you need to show prejudice by saying, proving to us that a court of appeals in South Carolina, if it had been able to reach the issue, if the issue had been preserved, that the South Carolina appellate court would have reversed the outcome here, right? The outcome would have been different. Yes, Your Honor. And the prejudice prong has been. Ms. Washburn, you take position. The law is clear in South Carolina on that. The evidentiary part of the trial was over and it couldn't be reopened, right? Yes, Your Honor. Your Honor, the. This was right in the middle of the jury deliberations. But now, are you saying that the deficiency here was by the trial counsel only, or are you attributing ineffective counsel claims to other of the lawyers who represented your client along the way? Your Honor, the ineffective assistance of counsel claim is confined to the trial judge in this instance, or trial counsel, because she did not object. Why don't you have a. Why didn't you bring a claim on the direct appeal? That lawyer filed an Andrews brief. Your Honor, I cannot speak to that. That lawyer filed an Andrews brief. Your Honor, the issue was not preserved. And this court granted the oral arguments on the issue with the trial counsel alone. And to go back to Judge Rushing's point about. And the counsel on appeal from the PSR proceedings filed an Andrews brief. Do you know what those are, Andrews brief? Yes, Your Honor. That's when you say there's no claim. There's nothing to raise on appeal. Yes, Your Honor. You held the appellate court in here. Yes. This fellow's had six lawyers, counting you all. Yes, Your Honor. And there was nothing to. Sorry, go ahead. Just looking at those raises concerns about me, to be honest with you. Go ahead. Yes, Your Honor. And the issue was not preserved for appeal. She was the one who was under the gun. She was under the gun. She was sitting there during the deliberations and had to face that judge who had been pushing her around during the trial. And she got pushed around right there, I think. But these trial lawyers ought to be willing to plant their feet and make a record for their time. Yes, Your Honor. And we would agree. And to go back to Judge Rushing's point, the South Carolina Supreme Court has held in State v. Hart and the South Carolina Court of Appeals has held in State v. Pinkers that while the display of physical characteristics is non-testimonial, it does constitute evidence. So this was an improper introduction of evidence during jury deliberations. So that was clearly prejudicial to Mr. Witherspoon. And that's clearly denoted by the short time frame between the jury who had previously asked to be declared a hung jury and their unanimous verdict after a mere 10 minutes after the presentation. But what they did… Didn't counsel testify? …was that the case was reopened there during the jury deliberations and additional evidence was presented. And the request to reopen didn't come from the prosecutor. He stood mute when all this was going on, I think. And the request to reopen the evidence came from the jury for all people. He wanted the trial reopened to present additional evidence and present what the jury wanted. And the prosecutor stood mute by his obligation to provide a fair trial. Your Honor… Go ahead. Your Honor, the case was not… How are you? How are you? I wouldn't… Just some advice. I wouldn't interrupt judges too much. Go ahead. I'm sorry, Your Honor. I'm having a hard time hearing you. I didn't know that when you were finished. I apologize. That's the drawback of the system we're under now. And I didn't mean to be critical of you. You're doing a great job. You go right ahead. Your Honor, the case was not reopened in this instance. And just the jury's request, the trial judge does have discretion to grant jury's requests. However, the trial judges in State v. Winkler, the South Carolina Supreme Court held that while a court may permit juries to review evidence during judicial deliberations, the review of it has to mirror the way that it was presented at trial. And in this case, it did not mirror it because Mr. Witherspoon was never asked to present his physical characteristics at trial, nor was this video zoomed in, paused, and enlarged for the jury to view, much less the fact that they were side-by-side. Your Honor, I see that I'm running out of time. May I briefly conclude? You can, but I don't understand what you just said. I thought just exactly the opposite, that it was reopened. Not officially reopened, but effectively reopened for the picture and for the show-up. Your Honor, it wasn't officially reopened, and regardless trial- I agree it wasn't officially reopened, but as a practical matter, it was reopened at the request of the jury. It was reopened. I'm saying that in an effort to assist your client or you, not to be critical of you at all. I think in this instance, it was reopened. Yes, Your Honor. And that just goes to show that trial counsel should have objected to the reopening of it in the presentation of new evidence during deliberations, which she failed to do. Your Honor, the state post-conviction court's application of federal law was objectively unreasonable here. Trial court's attempt to object in her intentions to make a record were insufficient because intentions are not preserved in records, actions are. And here, trial counselor's failure to object to the introduction of new evidence during deliberations was clearly deficient and highly prejudicial to Mr. Witherspoon. Therefore, for the reasons stated in brief and oral argument, Appellant Lionel Witherspoon respectfully requests that this court reverse the judgment dismissing this petition for habeas corpus. And my co-counsel will be happy to answer any further questions you have on rebuttal. Thank you. Thank you very much, Ms. Lockwood. We appreciate you. Mr. Evans? Yes, sir. Good day to you, Mr. Evans. Thank you, Your Honor. May it please the Court, my name is Tommy Evans, Jr. I am from the South Carolina Attorney General's Office. I represent the respondent in this case. Our position is that the U.S. District Court truthfully stated within its order that the pivotal question is whether the state court's application of Strickland was unreasonable, which is different than whether the defense counsel's performance fell below the Strickland standard. Our position is that the district court was proper in its ruling granting summary judgment. One, because the state court didn't make a proper application of Strickland in the PCR applying it to the actions of defense counsel. Our opinion is that defense counsel did make an objection. She was asked by the trial court, is there an objection? She said, I would, Your Honor, but she was cut off. So we don't know what she was going to say after that period she was being cut off by trial counsel. Also, Mr. Evans, it's contrary to objecting. I would object, but what means I'm going in the opposite direction. Your Honor, I respectfully disagree because we don't know what doesn't. How can you say that? I mean, it's standard English. Well, first of all, I think that is being speculative, which I don't think we should do in a case like this. We should go by what's on the record. Second of all, she can say, Your Honor, I would like to object. But I don't know if you can rule in my way, my favor, or, but I think this is improper. That's why I wanted to object. There's a lot of things that could have been said in that situation when she made that statement. But we don't know. It wasn't asked to her on PCR, which it would. So we have to go by what she said in the first part of that statement that she would object. Then you just eliminate the word but. Yes, I would eliminate the word but because we don't know what she could say after that because she was cut off. So I don't know what was her intentions or what was her thinking. Do you agree, Mr. Evans, that if she had said to the judge, Judge, this is reopening the case, and you can't do that while the jury's deliberating, everybody knows that, he would have said, You're right. That would have been the end of it. And that would have avoided this poor fellow. I don't know if he would have said that, Your Honor, because it was clear by the record that he was going to allow whatever the state wanted to see to see. Yes, sir. The law of South Carolina, it was totally on her side. It was an objection that she should have made, and it was an objection that should have been sustained. The point is, she didn't make the objection. It's what your colleague on the other side there is saying. She didn't make the objection. Well, of course, we wouldn't be here if they agreed with me, Your Honor. That's my law. It should have been sustained because it's the law. Well, they are case law. They reopened the case and put in additional evidence, and the defendant was convicted in 10 minutes. There is case law that basically is saying that this is not reopening the case because the video was already in evidence. U.S. v. Washington was the D.C. Court of Appeals case. It pretty much says that, and it was on point with this case, that since the actual defendant was being seen to try a trial, and he was identified by the colonel's informant, it is not reopening the case. This is not putting new evidence. This is just an aid to the jury in order to make an actual truthful verdict in this case because there could have been individuals in the jury that were not able to see him properly. Therefore, for them, for the judge to order him to stand before the jury so they can make a proper identification, that would give all jury members the same playing field in which they can make a proper verdict in this case. So, it's our position. They come in in the trial, though. They're subject to cross-examination and all those things. But that was an aid to jury deliberations. It was not reopening the case. That's our position. It's no different than the case of U.S. v. George where the jury used a magnifying glass in order to properly see evidence. It's the same situation. Our position is it was not reopening the case. It was giving the jury the ability to make a proper verdict in this case, giving them the ability to aid them in order to make a proper decision. If that was not him on the video, they can rule that he was not guilty. It went either way in this situation. I don't think the trial court knew what they wanted to see. But it was obvious during the record that the trial court was going to let them see whatever they wanted to see, regardless of any objection that was made by the defense counsel. And it's our opinion that the defense counsel made a proper objection to the case. For an objection to be an objection, it doesn't have to be an actual state of the word objection. All it has to be is a situation where the court realizes that the defense counsel is going against what they're about to rule on, a ruling being made. Are you arguing then that there was an objection interposed? Yes. My argument is that she made an actual objection in this case. And she did object. Yes, I did. The public defender objected and says, okay. Yes, that's my position. And the PSR, not the PSR, whatever they call it now, the PCR, Post-Conviction Relief Act, that judge said there was an attempt to object. Not that there was an objection. There was an attempt to object. Yes, sir. I think he said that because that's what the defense counsel actually said on testimony in PCR.  An attempt to object is an objection. Yes, sir. I mean, that's our position, that she actually made an objection. Because when she said, I would, it was actually a ruling before. Yes, sir. An attempt to object, as the PCR judge said, has found an attempt to object equals an objection. I would say. South Carolina, federal court authority that says that. I don't know of any federal court authority or South Carolina authority. I mean, under Rule 103 of the South Carolina Pulling Court Rules, the only time you would need to make a reason for an objection that was not clear by the facts of the actual case. In this case, it is clear what she was objecting to. She was objecting to the court ordering his client to stand for that jury. And so our position is that that's sufficient. Because when you make an objection, it's only making this for one or two reasons. Either one, they exclude evidence, or two, preserve a particular subject for appeal. And it was obvious in reading of the record, the judge who stated himself, whatever they want, I'm going to give it to them. So it was obvious that whatever request they were going to make, the judge was going to honor that request. So the only other standard to make an objection after that was to preserve the record. And our opinion is she did that. It was sufficient enough to preserve the record because she made a statement to the court and forced the court to make a ruling on that particular statement. That is all that is needed to be made in order to make an objection against. Well, but the thing is that, you know, everybody was tired because they had been dealing with this case for a long time. And they were sitting there and they were impatient. And maybe the judge was going to allow the evidence in come hell or high water. But I don't think the lawyer did much to point him, did anything to point him in the right direction to say this is essentially doing a show up or a lineup in the courtroom or creating a demonstrative exhibit or whatever you want to call it. It's wholly new evidence with a freeze frame on the video and Mr. Witherspoon having to stand next to it. If she had pointed that out, the judge would have said, you're right. From what I've read in the record, I don't agree with it. I just don't know what the judge was going to do. And being a former trial attorney myself, there are certain instances where you know where the court is going. And you know the temperament of certain judges. And I don't want to say that the lawyer here isn't representing the judge. The defense lawyer here is not being the prosecutor. The defense lawyer's loyalty is to her client. To her client, not to herself even. It's to her client, not the judge. She has to act on behalf of her client. If she had objected under South Carolina law, as I see it, the objection should have been sustained. And so she should have objected because it was prejudicial. It seems to me, we go up right in the courtroom with this new evidence after everybody rested. They rested the case and argued the case. Instructed the jury. And the jury deliberated. And even given them an Allen charge. Danamite charge, trying to break the tie. And it didn't work. So this incident occurred. And if it's new evidence, they reopened the case. Effectively. Right there in the courtroom at the request of the jury. But anyway, go ahead. I didn't mean to take all your time. I totally agree with you, Judge King. She does. It's her job to represent her client. You're absolutely right. But sometimes in a situation like that, you know we'll have to pick your battles. And you don't want it to be more detrimental to your client than it should be. Even she said in the PCR that if I was held in contempt, it wouldn't have helped my client at all. He would still have to stand trial. So that's a judgment call that she made in that situation. I think under Strickland, we don't hold judgment calls against attorneys in situations. Because none of us are there in that situation. So therefore, personally, I think our position is that she made an objection. That objection was ruled upon. It was sufficient objection for the case to be, the situation to be appealed. And they didn't raise that in the appeal. That was not this attorney's fault. That goes to appellate counsel. And maybe there should have been a PCR raised against appellate counsel in this case for not raising this issue in the appeal, which was not done. If I may, I'd like to go to the second prong of Strickland. I think there's been more than one lawyer along the way here. There have been six. I was going to say six sets of lawyers. Five sets before they got to the, before we got to Wake Forest. They were helping us out here now. And maybe it's a collective situation. Go ahead. I understand your point, Your Honor. But the only cases before you today is the actions of the trial attorney. And my position is that she didn't do anything wrong. She might not have been as vocal as any one of us thinks she should have been. But I think that the assessment on Strickland is not what we would have done in that situation, but what she'd done in that situation, which was enough in order to preserve the record for appeal. And that's the only way that you would object to that situation. It was clear by the record that the trial court wasn't going to grant what the jury wanted in that situation. So all she could have done in that period is to raise an objection, which she did. It wasn't as vocal and as forceful as I think any of us would like to have seen, but I think it was enough in order to preserve the case for appeal. And that's the question about whether she objected, and the judge acknowledged the objection and said, I think it's proper, overruled her. That's a factual question, is it not, that the PCR court made a factual determination about what actually happened. Is that right, or is this a legal question for us? I think it was a factual question whether or not she actually raised an actual objection, which was ruled on by the PCR court. According to her statement, she says I attempted to object. And I think that's what we saw. And under AEDPA, there's a pretty high standard of review, right, for us, for legal questions, but especially for fact findings by a PCR court. Yes, there is, because this court obligation, the actual district court's obligation, was to make a determination of whether or not the PCR court followed strict treatment, and not whether the defense attorney lived up to the problems within the stricter case. So, yes, there is a pretty high standard that must be, that is raised in a particular situation as this. If I can get to the second problem of strict treatment, whether or not any deficiencies, if there were a difference, would it have made the results different? Our position is it wouldn't. And even though she testified to PCR, she spoke to jury members, and jury members changed their mind. Once that situation was done, our position is that that was nothing due to her actions. It was due to the actions of the trial court. And I would reiterate, it is clear on the record that the trial court was going to allow the request of the jury. There was nothing in the record that would show that the trial court had any other intentions but to force the appellant to stand, to be actually shown up against the actual video. Personally, I don't think there was nothing that she could have done other than make it more detrimental to her client by getting in a shouting match with the court in front of the jury, which is already obvious that this judge didn't have the temperament for something like that, and I think that's the reason why she kind of stood down once she made her positions clear. But once the jury made that request to have that video played and to have the video blown up in that situation, the judge was going to allow him to stand and be there. So that is the actions from the court that changed the result of the case, not the actions of the actual trial attorney. Therefore, strictly the second problem does not apply in this case either, and that's the opposition. And I said before, even if she objected forcefully and the judge ruled against her, I just don't know if it's a meritorious because there is case law saying that this is allowable, that this is not reopening the case. This is not new evidence. This is not testimony. This is just a defendant that was being allowed to aid the jury in making a just decision on this case and a fair decision. That is not evidence, right? The evidence, the video was already in evidence. Yes, sir. You're saying this was not evidence. That's the position of the state of South Carolina, that this was not evidence. Yes, sir. It was not evidence. Yes, sir. All right. I understand. What evidence? What was it? It was, the video was evidence. This was an aid to the jury in order to make a decision. It's no different than a jury member using a magnifying glass or actually a court to enlarge the picture that was already in evidence for them to be able to make a decision regarding this case. I'm sure the jury wanted to make the right decision in this case. And surprisingly, there were a reflection of a side mirror of the person in the back seat. So I'm sure the jury wanted to make sure that the person in that mirror was either the defendant or not. And that's all this was, is for the jury to make a fair decision regarding if that was the person in the back seat who obviously made the drug transaction. There was no doubt about that. The person in the back seat made the drug transaction. The question was, was that the defendant or was it not? And by making this... Judge Gidney asked you, if it wasn't evidence, what was it? I can't understand your question. It was something to aid the jury in making the decision. Yes, sir. Tell me specifically, what was it if it wasn't evidence? It was an aid to the jury to make a fair decision. That's what it was. It was an aid to the jury. Yes, sir. It wasn't evidence. Because the video was already in evidence. It was something that was already in evidence. And the jury used that video to make an aid and used the actual show-up to aid them to make a fair and just decision in this case. Because if it wasn't the defendant, they would have found him not guilty, of course. I'm almost out of time. So I will just ask this court to confirm the decision of the district court in issuing the summary judgment motion. And I will thank you for your time and attention, sir. Thank you. Thank you, Mr. Evans. Good to have you with us. Appreciate it. Mr. Shaw, you're going to do the rebuttal? Yes, Your Honor. Good afternoon. Good to have you with us, Mr. Shaw. Thank you for your work. Thank you, Judge. Go ahead. All right. May it please the court. Good afternoon, Your Honors. I just have a few points on rebuttal. The first point is to Judge Gibney's point about the reasonable probability under the Strickland test, but for counsel's errors, a potential reasonable different outcome may have arisen. And previously to this video being shown as new evidence to the jury, there were two jury questions that the trial judge stated that he would not answer because it would be highly improper to supplement evidence in jury deliberations since those questions did not arise at trial. And this is seen on page 229 of the joint appendix. And, therefore, if trial counsel had made another objection to make sure that the judge had even heard her because from the record, unlike what opposing counsel states, it's unclear whether the trial judge even heard her. We don't know about the time in between. So just another objection just to preserve it, preserve the appeal for record, preserve the objection for record. And it's clear that trial counsel knew how to preserve a record, preserve an objection for the record. On page 241, she states that there was an Allen charge that she objected to within judges' chambers, which wouldn't be on the record, and then came back on the record and stated, judge, just to preserve this for the record, I want to just state that I did object to this. So it's clear that she knew how to preserve a record for potential appeal. And, therefore, if she had made an actual objection and stated that this was highly improper and new evidence, then there's a reasonable probability that the trial judge would have agreed with her along those points, considering that nearly a few minutes beforehand, he had refused to answer jury questions that he stated would be bringing new evidence into jury deliberations. Well, counsel, I appreciate your argument. I'm not sure that just showing a reasonable probability is your standard here, though, right? Because you have EDPA in addition to Strickland. So you have to show that there's no reasonable argument that counsel satisfied Strickland. That's what the Harrington case says, right? So you have two layers of review. So you have to not just show that there is a probability of a different outcome, but that there's actually no reasonable argument that counsel satisfied Strickland. Yes, Your Honor, that's correct. Excuse me, 2254D, it's the unreasonable application of clearly established federal law. And this is sort of construed differently because we're not arguing the contrary two point, but we are arguing the unreasonable application of federally, excuse me, of law of the Supreme Court. And in fact, the Strickland test bases it off of a reasonable probability of but for counsel's errors. And then the prejudice point, which Judge Rushing, you mentioned earlier. And it's clearly deficient not to object to something like this because it's based off of prevailing professional norms. So, again, even despite the fact that this is not an objection, a one more objection just to ensure that the judge heard her and to ensure that there's a reasonable probability trial judge would have agreed with her and stop this from happening. In fact, there was a brief pause in the proceedings. As co-counsel mentioned earlier, there's even a time when in the PCR testimony, trial counsel states that Mr. Witherspoon looked back at her for wisdom and she stated, the judge has asked you to stand. You must stand. She could have made an objection at that point as well to preserve it for the record. And even in the PCR hearing, she could not state a reason or a trial strategy that she didn't object. And that's just near that states to the fact that there was no objection in the first place. She didn't even she said if there's one thing she could do differently, she would she would have objected. And because that was the most detrimental to her client and your honors, the last point I will make is to opposing counsel's contention that this wasn't new evidence. In respondents brief, opposing counsel states that the evidence in jury deliberations can be shown, but only if it mirrors presentation at trial. And here it's clear that there was no mirroring presentation of trial. There's there's combination here on the prejudice point. The fact that Mr. Witherspoon was asked to go and face the jury instead of his side profile and the fact that a video shown during trial was now paused and blown up. So it became a new it became a still image, which is a completely new form and therefore does not mirror its presentation at trial and therefore was highly. You're saying what they what they presented to the jury, there was a new piece of evidence. Absolutely, your honor. That's exactly what I'm saying. The combination of Mr. Witherspoon. It was a blow up. That's exactly right, your honor. What was the size? Your honor, we don't know the exact size. However, we do know that a screen dropped down from the top of the courtroom and that it was blown up. However, there's no size mentioned in the joint in the appendix. What was the size of the screen? Your honor, we also do not have this information. It was not stated in the joint appendix. All we know that was it's that it was blown up and it was clearly pixelated as well, which trial counsel stated in her PCR testimony. The PCR, the PCR judge knew the size of the screen, right? Because it was in the same courthouse. It sounded like from reading the testimony. Apologies, your honor. Yes, yes, your honor. That's correct. I mean, it's not in the record, but the judge, the PCR judge knew because they they talked about it. That's exactly right. The PCR judge would have known in the testimony. However, the actual size is not in the record that we are. We are here with today and your honors. Therefore, Mr. Witherspoon respectfully request this court to reject. Excuse me. Reverse the judgment dismissing his petition for habeas corpus. Thank you. And thank you, Mr. Shaw. And we want to particularly thank both Ms. Washburn and Mr. Shaw, Mr. Professor Corson for your work in this case. And in there, Mr. Evans, for your argument as well. And if we were if we were in Richmond, we'd at this point introduce ourselves more formally and shake hands with counsel or at least tell you how much we appreciate your work. And the next time you come to Richmond, I hope we can we can do that. Thank you, your honor. Always an honor. And I enjoyed meeting you, too, Mr. Evans. Thank you all. Thank you.
judges: Robert B. King, Allison J. Rushing, John A. Gibney Jr.